```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION
```

Rebecca S. Parrett, et al.,     :
                                        Case No.  2:04-cv-489
     Appellants,            :
                                        JUDGE GRAHAM
   vs.                          :
                                        Chapter 11
National Century Financial      :
Enterprises, Inc., et al.,              Judge Calhoun
                                :       (Case No. 02-65235)
     Appellees.

<u>OPINION AND ORDER</u>

This matter is before the Court on the appeal of Purcell & Scott, Co., L.P.A. from the bankruptcy court's April 16, 2004 Order Confirming the Fourth Amended Joint Plan of Liquidation of National Century Financial Enterprises, Inc. and its Debtor Subsidiaries.

This appeal has a lengthy procedural history, but the sole remaining issue on appeal is whether the bankruptcy court erred by authorizing the transfer of the Debtors' legal malpractice claims from the Chapter 11 estate to a post-confirmation trust.  For the reasons stated below, the Court finds that the bankruptcy court did not err and thus denies Purcell's appeal.

I.     **BACKGROUND**

National Century Financial Enterprises filed for Chapter 11 bankruptcy on November 18, 2002.  The Debtors proposed a Joint Plan of Liquidation (the "Plan") on January 13, 2004.  The Bankruptcy Court confirmed the Plan on April 16, 2004.

Article IV of the Plan provided for the creation of three post-confirmation trusts, including the Unencumbered Assets Trust

(the "UAT"). The Plan gave these trusts the responsibility of enforcing all causes of action belonging to the liquidated estate. The bulk of the estate's causes of action, including legal malpractice claims, were assigned to the UAT. See Liquidation Plan, §IV.D.4.a. Any assets obtained by the trusts through litigation are to be distributed to the estate's creditors.

Purcell objected to the Plan on several grounds, including that it improperly assigned the malpractice claims to the UAT. Purcell argued that under Ohio law, malpractice claims may not be assigned or transferred. See Sparagowski v. Williams, No. L-80-064, 1980 WL 150172 (Ohio Ct. App. July 25, 2980).

The bankruptcy court rejected Purcell's objection. Though acknowledging that Ohio law prohibits the sale or trafficking of malpractice claims, the court found that the transfer to the UAT was not a sale. Rather, the Plan called for a "funneling" of claims "from prepetition debtors to a postpetition trust." See Trans. of April 16, 2004 Afternoon Hearing, p. 8.

Purcell, among other parties, filed an appeal of the Confirmation Order. The Court has disposed of all issues on appeal except Purcell's appeal concerning the malpractice claims. See Jan. 27, 2005 Order, Sept. 13, 2005 Order.

On appeal, Purcell repeats its argument that legal malpractice claims may not be assigned or transferred in Ohio. Purcell emphasizes that the Plan itself states that the UAT is "an assignee" of the Debtors' assets. See Liquidation Plan, §IV.D.2. Purcell contends that the bankruptcy court erred by authorizing the assignment of the Debtors' malpractice claims.

In response, the UAT argues that the rule against

2

assignability of malpractice claims should not be applied where, as here, a bankruptcy estate's malpractice claims are assigned under the Bankruptcy Code to a litigation trust for the benefit of the estate's creditors.

**II. JURISDICTION AND STANDARD OF REVIEW**

This Court has jurisdiction under 28 U.S.C. §158(a) to hear bankruptcy appeals. A bankruptcy court's findings of fact must be upheld unless clearly erroneous. In re Downs, 103 F.3d 472, 476-77 (6th Cir. 1996); In re Southern Indus. Banking Corp., 809 F.2d 329, 331 (6th Cir. 1987); see also Bankr. R. 8013. A bankruptcy court's conclusions of law are reviewed de novo. In re Downs, 103 F.3d at 476-77; Stephens Indus. Corp., Inc. v. McClung, 789 F.2d 386, 389 (6th Cir. 1986).

**III. DISCUSSION**

Purcell is correct that the assignment of legal malpractice claims is generally prohibited. While Ohio case law is scarce, most states have adopted that rule. See, e.g., Sparagowski, 1980 WL 150172, at * 3 ("A cause of action running in favor of a person or corporation for legal malpractice is not transferable or assignable."); Goodley v. Wank & Wank, Inc., 62 Cal. App. 3d 389, 395 (Cal. Ct. App. 1976) (holding that "a chose in action for legal malpractice is not assignable"); Weiss v. Leatherberry, 863 So.2d 368, 371 (Fla. Ct. App. 2003) ("Florida courts follow the majority rule that a cause of action for legal malpractice is not assignable."); City of Garland v. Booth, 895 S.W.2d 766, 769 (Tex. Ct. App. 1995) (same).

The rule against assignability of legal malpractice claims stems from "the unique quality of legal services, the personal nature of the attorney's duty to the client and the confidentiality of the attorney-client relationship." Goodley, 62 Cal. App. 3d at 397. As the court in Goodley explained,

> The assignment of such claims could relegate the legal malpractice action to the market place and convert it to a commodity to be exploited and transferred to economic bidders who have never had a professional relationship with the attorney and to whom the attorney has never owed a legal duty, and who have never had any prior connection with the assignor or his rights. The commercial aspect of assignability of choses in action arising out of legal malpractice is rife with probabilities that could only debase the legal profession. The almost certain end result of merchandizing such causes of action is the lucrative business of factoring malpractice claims which would encourage unjustified lawsuits against members of the legal profession, generate an increase in legal malpractice litigation, promote champerty and force attorneys to defend themselves against strangers. The endless complications and litigious intricacies arising out of such commercial activities would place an undue burden on not only the legal profession but the already overburdened judicial system, restrict the availability of competent legal services, embarrass the attorney-client relationship and imperil the sanctity of the highly confidential and fiduciary relationship existing between attorney and client.

Id.

In this case, the general rule prohibiting the assignment of malpractice claims must be examined in the context of bankruptcy law. Under 11 U.S.C. §541(a), the filing of a petition for bankruptcy relief creates an estate. With a few exceptions, the "property of the estate" includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. §541(a)(1). Thus, "[u]pon the commencement of a bankruptcy case, a pre-petition legal malpractice claim of the debtor becomes

4

property of the bankruptcy estate." In re C-Power Products, Inc., 230 B.R. 800, 803 (Bankr. N.D. Tex. 1998). See also In re Cottrell, 876 F.2d 540, 542 (6th Cir. 1989) (finding that §541's definition of property "include[s] all assignable and nonassignable causes of action").

Purcell does not argue that state law overrides the Bankruptcy Code on this point. Purcell concedes, as it must, that National Century's malpractice claims became the property of the bankruptcy estate once National Century filed for bankruptcy. See U.S. Const. Art. VI, cl. 2.

Instead, Purcell argues that the malpractice claims, once in the estate, could not be assigned elsewhere. Though bankruptcy law determines whether an interest is property of the estate, state law determines the extent of the debtor's interest in the property. See In re Graham Square, Inc., 126 F.3d 823, 831 (6th Cir. 1997); In re Crysen/Montenay Energy Co., 902 F.2d 1098, 1101 (2d Cir. 1990). Therefore, the estate takes the property with the interests impressed by state law. See Butner v. U.S., 440 U.S. 48, 99 S.Ct. 914 (1979).

Purcell cites a number of cases holding that a bankruptcy trustee's attempts to sell a legal malpractice claim are without effect. See Sparagowski, 1980 WL 150172, at *3 (dismissing complaint of plaintiff who had purchased at public sale a legal malpractice claim belonging to a bankruptcy estate); In re J.E. Marion, Inc., 199 B.R. 635, 636 (Bankr. S.D. Tex. 1996) (denying motion by bankruptcy trustee for authority to sell malpractice claim to a creditor group); Curtis v. Kellogg & Andelson, 86 Cal. Reptr. 2d 536 (Cal. Ct. App. 1999) (dismissing legal malpractice

5

claim brought by shareholder who had purchased the claim from the trustee of the bankrupt corporation's estate).

Unlike those cases, however, the assignment of legal malpractice claims to the UAT was not a marketplace sale. To liquidate the National Century estate, the Plan assigned the malpractice claims to the UAT, a post-confirmation trust. The assignment did not implicate the concerns expressed in Goodley that malpractice claims could be converted "to a commodity to be exploited and transferred to economic bidders who have never had a professional relationship with the attorney and to whom the attorney has never owed a legal duty." Goodley, 62 Cal. App. 3d at 397.

Purcell argues that any assignment of a malpractice claim is invalid, regardless of whether it was a "sale." The court in Sparagowski held that a legal malpractice claim is "not transferable or assignable" and did not use the word "sale." 1980 WL 150172, at *3. Based on Sparagowski, Purcell argues that any assignment of a malpractice claim is prohibited.

The difficulty with Purcell's argument is that it attempts to create an overriding rule from a single, unpublished case with facts dissimilar to the ones here. The Court would agree that a legal malpractice claim generally cannot be assigned, regardless of whether it was a sale. See, e.g., Baum v. Duckor, Spradling & Metzger, 84 Cal. Rptr. 2d 703, 712-13 (Cal. Ct. App. 1999) (dismissing legal malpractice claim of creditor who had been assigned the claim by a bankruptcy trustee); Freeman v. Basso, 128 S.W.3d 138, 142-43 (Mo. Ct. App. 2004) (dismissing legal malpractice claim brought by assignee who had benefitted from the

6

alleged malpractice).  But a more careful approach is required than the blanket rule advocated by Purcell.  The rule must be examined in light of the facts before the Court.  See In re C-Power Products, Inc., 230 B.R. 800, 802 (Bankr. N.D. Tex. 1998) ("[T]he court reviews the Texas law [prohibiting the assignment of legal malpractice claims] in the context of a case under Chapter 11 of the Bankruptcy Code.").

"[T]he controlling principle of the Bankruptcy Code is the quick and efficient resolution of the bankrupt estate."  In re Enron Corp., No. 01-16034, 2006 WL 538552, at *4 (Bankr. S.D.N.Y. Jan. 6, 2006).  Section 105(a) of Chapter 11 grants bankruptcy courts broad equitable powers to effectuate the purposes of the Bankruptcy Code, so long as the court's actions are not inconsistent with the Code.  See In re ATD Corp., 352 F.3d 1062, 1066 (6th Cir. 2003); In re Richard Potasky Jeweler, Inc., 222 B.R. 816, 829 (S.D. Ohio 1998).  The Code specifically contemplates the need for post-confirmation entities to implement a plan.  11 U.S.C. §1123(a)(5)(B) (authorizing the "transfer of all or any part of the property of the estate to one or more entities, whether organized before or after the confirmation of such plan").

Here, the bankruptcy court confirmed a Plan that achieved a timely resolution of National Century's estate.  The Plan established the UAT to liquidate most of the property belonging to the bankruptcy estate and distribute proceeds to the creditor body.  Purcell cites no cases holding that state law prohibits the transfer of a bankruptcy estate's malpractice claim to a post-confirmation trust established to litigate claims for the benefit of creditors.

The UAT cites <u>Jewel Recovery, L.P. v. Skadden, Arps, Slate, Meagher & Flom</u>, No. 392-30001-SAF-11, 1996 Bankr. LEXIS 1933 (Bankr. N.D. Tex. Sept 5, 1996). That case presented the issue of whether a legal entity created to litigate the claims of a bankruptcy estate could prosecute the estate's legal malpractice claims. The court, though recognizing that Texas common law prohibits the assignment of legal malpractice claims, found that the rule should not apply where the assignment is provided for "by operation of law." 1996 Bankr. LEXIS 1933, at *6-7 (discussing the possibility of malpractice claims being assigned by operation of state probate law); <u>see also</u> <u>Federal Deposit Ins. Corp. v. Martin</u>, 770 F.Supp. 623, 625 (M.D. Fla. 1991) (relying on operation of 12 U.S.C. §1823 in allowing assignment of malpractice claim to the FDIC as receiver of failed bank). The court noted that bankruptcy courts, by operation of 11 U.S.C. §1123, have the authority to accomplish liquidation by creating post-confirmation entities to prosecute the claims of the estate. The court concluded that allowing the transfer of the estate's malpractice claims did not undermine any of the policy concerns behind the rule against assignability:

> [A] transfer by and pursuant to the Bankruptcy Code does not implicate any of the general policy concerns discussed by the cases prohibiting the assignment of legal malpractice claims. The Bankruptcy Code transfer is not a marketplace transaction. The debtors in possession did not sell the claims to an economic bidder. Rather, under the Code, a legal entity was created to stand in the shoes of the debtors in possession to be the representative of the bankruptcy estates. This is not a merchandizing of legal malpractice claims. This is not an effort to replace a judgment-proof, uninsured defendant with a solvent defendant. To the contrary, this is a situation designed to permit an insolvent client to pursue legal malpractice claims.

8

> . . .
>
> Skadden offers no reason why permitting a legal entity created pursuant to the Bankruptcy Code to litigate a debtor's legal malpractice claim on behalf of the debtor's bankruptcy estate should have any adverse effect on "modern society" or the legal system. Rather than debase the system or harm the attorney-client relationship, it may have just the opposite effect. A system designed to permit the adjudication of a bankrupt's legal malpractice claims for the benefit of the bankrupt's estate may actually strengthen the legal system by enhancing its legitimacy in the eyes of those economically affected by it.

1996 Bankr. LEXIS 1933, at *8-9.

The Court finds this reasoning persuasive. When National Century filed a petition for bankruptcy relief, its malpractice claims became the property of the estate. The Bankruptcy Code authorizes the creation of post-confirmation entities whose purpose is to liquidate the property of the estate for the benefit of creditors, and that is what happened here. The Plan created a legal entity, the UAT, to litigate the malpractice claims in place of the dissolved estate. The assignment did not change the beneficial owners of the claims, the estate's creditors. Allowing the malpractice claims to be assigned to the UAT does not undermine any of the policy concerns behind the general rule against the assignment of malpractice claims. Purcell is unable explain why the rule should be applied where the assignment is authorized by operation of law, where the rule's policy concerns are not implicated, and where application of the rule could frustrate the aims of the Bankruptcy Code.[1]  See In re Porter McLeod, Inc., 231

---

[1] The Court's decision should not be interpreted to allow bankruptcy trustees to sell or assign legal malpractice claims directly to creditors. Rather, the Court's decision is confined to the narrow facts of this case – an assignment to a post-confirmation trust created to litigate the estate's

B.R. 786, 801 (D. Colo. 1999) (permitting legal malpractice claims to be assigned between bankruptcy trustees because it did not threaten the sanctity of the attorney-client relationship but did "promote the efficient administration of these bankruptcy estates which can only inure to the benefit of the estates' creditors").

Thus, the Court finds that the Plan's transfer of the estate's legal malpractice claims to the UAT did not violate Ohio law.

**IV. CONCLUSION**

Accordingly, Purcell's appeal of the bankruptcy court's April 16, 2004 Confirmation Order is DENIED. The bankruptcy court's decision is AFFIRMED.

Having addressed all of the matters brought in this Case No. 2:04-cv-489, the Court instructs the Clerk of Court to close this appeal.

s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: March 23, 2006

---

causes of action for the benefit of creditors.